**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **MARIA D. CONTRERAS,** *as* | § | |
| ***Representative of the* ESTATE OF** | § | |
| **GERARDO CONTRERAS; and** | § | |
| **JOSE A. CONTRERAS** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 2:19-cv-00133** |
| | § | **JURY TRIAL** |
| **CITY OF CORPUS CHRISTI, TEXAS** | § | |
| **PEDRO YBARRA,** *Individually*; | § | |
| **LONNIE JACKSON,** *Individually*; | § | |
| **PHILIP MARTINEZ,** *Individually*; | § | |
| **JERRY LOCKHART,** *Individually*; | § | |
| **DANA ROBBINS,** *Individually*; | § | |
| **JOHN/JANE DOE #6,** *Individually*; | § | |
| **JOHN/JANE DOE #7, Individually; AND** | § | |
| **JOHN/JANE DOE #8, Individually** | § | |
| *Defendants* | § | |

**OFFICER DEFENDANTS'**
**REPLY TO PLAINTIFFS' RESPONSE TO OFFICER DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY**

**TO THE HONORABLE JUDGE MORALES:**

  **NOW COME**, Officers Pedro Ybarra, Lonnie Jackson, Phillip Martinez, Jerry Lockhart

and Dana Robbins, Individual Police Officer Defendants in the above-entitled and numbered cause

and file this Reply to Plaintiffs' Response to Officer Defendants' Motion for Summary Judgment

on Qualified Immunity pursuant to Rule 56 of The Federal Rules of Civil Procedure.  In support

of same, Officer Defendants Ybarra, Jackson, Martinez, Lockhart and Robbins would show unto

this Honorable Court as follows:

**I.**
**INTRODUCTION**

  1.  Officer Defendants incorporate the arguments and evidence emphasized within

their Motion for Summary Judgment on Qualified Immunity filed on January 15, 2020 (Doc. 43), and supplement those arguments within this Reply.

2.      This is a civil rights case filed by Plaintiffs Maria D. Contreras as Representative of the Estate of Gerardo Contreras and Jose A. Contreras ("Plaintiffs") based on a call CCPD Officers responded to regarding Gerardo Contreras banging on a neighbor's door around 3:30am on March 22, 2018 screaming for someone to call police. *See* Exhibit 6 – Ring Video 1 (showing the encounter giving rise to Plaintiffs' claims against CCPD Officers) and Exhibit 9 – Affidavit of Pedro Ybarra Re; Video Exhibits (supporting same). Plaintiffs allege that Corpus Christi Police Department (CCPD) officers Pedro Ybarra, Lonnie Jackson, Phillip Martinez, Jerry Lockhart and Dana Robbins used excessive force when they responded to the call on March 22, 2018 which resulted in Gerardo Contreras being tased after he failed to follow numerous verbal commands of officers and violently resisted arrest resulting in a prolonged struggle with CCPD officers. *See* Exhibit 6 – Ring Video 1; *see also* Exhibit 8 – Dash Cam Video.

3.      Plaintiffs also state an ADA failure to accommodate claim against the City of Corpus Christi and the individual police officers, alleging Mr. Contreras suffered from a "serious mental illness" and was "denied the benefits and services of their facilities by reason of his disabilities by, *inter alia*, failing to attend to and treat his serious medical needs and/or responding with violent and unnecessary force because of it." Plaintiffs' Second Amended Complaint at p.12, ¶ 34-38. This statement is simply not supported by any evidence of any specific disability Mr. Contreras suffered from, certainly not a disability known to the responding CCPD police officers on the date of the incident.

4.      Plaintiffs argue in their Response that they have pled a claim for medical indifference against Officer Defendants, but that claim is not specifically written within their

Second Amended Complaint. Even if the Court does find Plaintiffs have adequately pled a medical indifference claim – the CCPD police officer Defendants are entitled to immunity on this claim as well.

5.      Plaintiffs' Second Amended Complaint and Response to Officer Defendants' Motion for Summary Judgment on Qualified Immunity tries to obscure the salient facts, Mr. Contreras died of a cocaine overdose. While the autopsy does include the fact that a taser was used, and Mr. Contreras had multiple abrasions on his body, it is important to note that Mr. Contreras' cause of death was ultimately listed as "sudden cardiac death" with the manner of death being "Accidental". The toxicology results revealed Mr. Contreras had an elevated level of cocaine in his system.

> **X.      Toxicology revealed elevated blood level of cocaine; 210 ng/mL Benzoylecgonine; 2200 ng/mL**

*See* Exhibit 7 – Autopsy of Gerardo Contreras. While the drugs in Gerardo Contreras' system likely caused his delirium leading to the calls for police intervention, there is no evidence Officer Defendants knew Mr. Contreras had ingested illegal drugs prior to their arrival, nor did he warn officers he had any medical concerns when they arrived. *See* Exhibit 6 – Ring Video 1.

6.      Again, all five CCPD police officers named in this complaint responded to the incident on March 22, 2018. *See* Exhibits 1-5 Officer Affidavits; *see also* Exhibit 6 – Ring Video 1 and Exhibit 8 – Dash Cam Video. However, each officer denies they engaged in force that was excessive under the circumstances. *Id.* In fact, Officer Lockhart was not physically involved in the attempt to detain Mr. Contreras whatsoever. *See* Exhibit 5 Affidavit of Jerry Lockhart; *see also* Exhibit 6 – Ring Video 1 (Officer Lockhart arriving at 1 minute 41 seconds). Officer Jackson merely held onto Mr. Contreras' legs as Officers Martinez, Ybarra and Robbins attempted to

restrain and handcuff Mr. Contreras after he had to be tased by Officer Dana Robbins due to his active resistance and disregard for Officers Ybarra and Robbins' multiple verbal commands. *See* Exhibit 6 – Ring Video 1; *see also* Exhibit 4 Affidavit of Officer Lonnie Jackson. The CCPD officers who stood by were not indifferent to any medical emergency, and it's clear from the video footage they were simply trying to assist fellow officers in keeping the other officers' weapons away from the scuffle so they could detain Mr. Contreras safely. *See* Exhibit 6 – Ring Video 1 at 2:06-2:12; 2:22-2:28.

7.     Officers Pedro Ybarra, Lonnie Jackson, Phillip Martinez, Jerry Lockhart and Dana Robbins assert they are each individually entitled to immunity from suit as articulated in their Motion for Summary Judgment on Qualified Immunity and as further set out below in this Response.

## II.
### SUMMARY JUDGMENT EVIDENCE

8.     The summary judgment evidence previously attached to Officer Defendants' Motion establishes that each of the individual Officer Defendants is not liable to Plaintiffs for excessive force, and Officer Defendants are entitled to summary judgment. *See* Officer Affidavits attached hereto as Exhibits 1-5. Officer Defendants now add Exhibit 6 – Ring Video 1, Exhibit 7 – Autopsy of Gerardo Contreras and Exhibit 8 – Dash Cam Video to their list of exhibits.

**Exhibit 1**:     Affidavit of Officer Pedro Ybarra

**Exhibit 2:**     Affidavit of Officer Dana Robbins

**Exhibit 3:**     Affidavit of Officer Phillip Martinez

**Exhibit 4:**     Affidavit of Officer Lonnie Jackson

**Exhibit 5:**     Affidavit of Officer Jerry Lockhart.

| **Exhibit 6:** | Ring Video 1. |
| **Exhibit 7:** | Autopsy of Gerardo Contreras |
| **Exhibit 8:** | Dash Cam Video |
| **Exhibit 9:** | Affidavit of Officer Pedro Ybarra Re: Video Exhibits 6 & 8. |

9.     Not surprisingly, Plaintiffs have chosen to direct the Court's attention to four (4) Ring camera videos from both Mr. Contreras' porch and his neighbor's porch in their Response to the Officers' Motion for Summary Judgment.   They have failed to provide this Court with the video footage showing what CCPD Officers said and did when they arrived to find Mr. Contreras on the porch.  In reply, Officer Defendants are now including the Ring video and dash cam footage showing the incident as Exhibit 6 and Exhibit 8, respectively.  The Ring video attached as Exhibit 6 is the best evidence reflecting the material facts, and Officer Defendants' arguments herein. Exhibit 8 substantiates what Officer Ybarra and Officer Robbins said to Mr. Contreras in the seconds leading up to Officer Ybarra going hands on to try to get to Mr. Contreras' hands.

### III.
### SUMMARY OF RESPONSE

10.     Officer Defendants are entitled to summary judgment dismissal as to Plaintiffs' excessive force, medical indifference and failure to accommodate claims.   The evidence conclusively establishes that any force used by Officers Ybarra, Robbins and Martinez while detaining Mr. Contreras was not clearly excessive to the need.  Further, no show of force, let alone excessive force was exhibited by Officers Lockhart and Jackson.   The evidence also establishes the Officer Defendants were not indifferent to Mr. Contreras' medical needs.   In fact, the video evidence plainly shows there was no delay by CCPD officers in seeking EMS treatment for Mr. Contreras once he was apprehended and stopped fighting the officers.

11.     Plaintiffs' state common law claims for assault and battery are barred by official immunity.  Briefly stated, based on the facts and circumstances of the incident, each of the Officer Defendants are immune from suit, and hereby request the Court grant this Motion for Summary Judgment as to Plaintiffs' claims state law claims pled against each Officer Defendant.

12.     While the Court ordinarily gives deference to the facts as presented by the Plaintiffs, here Plaintiffs have offered the Court a blatant misrepresentation of the actual events, as can be seen on the Ring video attached to this Response as Exhibit 6.  Specifically, in their Response to Officer Defendants' Motion for Summary Judgment, Plaintiffs make the following statements such as, Officers had "their flashlights and a stun gun trained on Mr. Contreras" when they arrived. Plaintiffs' Response at p.4 ¶3) and "[a]s other Defendants arrive, they either join in the fun with intermittent kicks, punches, taser us [sic] and/or blatant slams to random areas of Mr. Contreras' body and/or stand by watching and/or holding the weapons of others who had joined." *Id.* at p.5 4).  Again, the best evidence of the officers' actions in response to Gerardo Contreras' violent resistance to their verbal commands, is the Ring video and dash cam audio and video which Officer Defendants are providing to the Court.

## IV.
### ARGUMENT AND AUTHORITIES

### A. EXCESSIVE FORCE

13.     Plaintiffs' excessive force claim fails against each individual Officer Defendant because Mr. Contreras' injuries did not result from a use of force that was excessive to the need and the exercise of which was clearly unreasonable.  Based on the summary judgment evidence cited within Officer Defendants' Motion (Doc. 43 *passim*) and Exhibit 6 the video showing the entire incident involving CCPD officers' interactions with Mr. Contreras on the night in question,

which is certainly the best evidence reflecting the incident, Officers Pedro Ybarra, Lonnie Jackson, Phillip Martinez, Jerry Lockhart and Dana Robbins are entitled to summary judgment in their favor.

14.     "To prevail on an excessive force claim, Plaintiffs must show '(1) injury, (2) which resulted ***directly and only from*** a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727-28 (5th Cir. 2018) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (Emphasis added)). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable excessive officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97, 109 S.Ct. 1865.

15.     First, Mr. Contreras' injuries were caused, at the very least ***in part*** from the significant amount of cocaine that was found in his system after his death. *See* Exhibit 7, Autopsy of Gerardo Contreras. The force used by Officers Martinez, Officer Robbins and Officer Ybarra in the form of a hands on attempt and struggle to detain Mr. Contreras, and Officer Robbins' subsequent decision to use a taser after multiple verbal commands requesting Mr. Contreras get on his stomach and stop physically resisting, was not excessive force under the circumstances. *Id.* Under the reasonableness at the moment standard, a reasonable officer in the place of CCPD Officers Ybarra, Robbins and Martinez could have believed that a response of physical

intervention and taser use to Contreras' resistance was lawful. First, Officer Defendants responded to this call related to a man with a gun or saying someone had a gun. *See* Exhibit 1, Affidavit of Officer Ybarra at page 1-2, ¶ 3-4; *see also* Exhibit 2, Affidavit of Officer Robbins at page 1-2, ¶ 3-5; *see also* Exhibit 3, Affidavit of Officer Phillip Martinez at page 2, ¶ 3-5. Then, when Officers Ybarra and Robbins arrived, they observed Mr. Contreras in a corner of the front porch at 2917 Masterson Drive in Corpus Christi Texas with his hands out of view. *See* Exhibit 1, Affidavit of Officer Ybarra at page 1-2, ¶ 3-4; *see also* Exhibit 6 – Ring Video 1; *see also* Exhibit 8 – Dash Cam Video. Officer Ybarra announced they were police officers and issued multiple verbal commands.

16. The nature of the call, and Mr. Contreras' body position on the porch along with his refusal to obey Officer Ybarra's verbal commands would cause a reasonable officer in Officer Ybarra's position to believe Mr. Contreras possessed a weapon. Then, Mr. Contreras posed an immediate threat to the safety of officers and others when he did not listen to Officers' multiple verbal commands and resisted minor intervention by Officer Ybarra in attempt to get Mr. Contreras on his stomach. Instead of complying once he knew Officer Ybarra and Officer Robbins were police officers, Contreras fought and yelled at Officer Ybarra and Officer Robbins as they repeatedly told him to get on his stomach. Officer Ybarra can be heard from the dash cam video making the following commands:

- "Let me see your hands dude." Exhibit 8 at 4:28.

- "Keep your hands up. Keep your hands up." *Id.* at 4:30-4:32.

- "Lay down on your stomach. Lay down on your stomach. Police department. Lay down on your stomach." *Id.* at 4:32-4:34

Mr. Contreras asked if they were police and Officer Ybarra immediately responded "Yes. Lay down on your stomach right now." *Id.* at 4:35-4:39. Officer Ybarra again stated, "Lay down on your stomach right now." When Mr. Contreras continues to talk back and asks to see a badge, Officer Ybarra again informed Contreras "I am a police officer. Lay down on your stomach right now." *Id.* at 4:40-4:50. Officer Robbins also commanded Contreras to get on his stomach. *Id.* Officer Ybarra finally stated, "I am only going to tell you one more time and then I am going to make you. Do you understand?" *Id.* at 4:50-5:00. Still, Officer Ybarra tried a few more times to command Contreras to get on his stomach before going hands on. *Id.* As the Ring video clearly confirms, the Officers faced an aggressive suspect who was violently resisting arrest from that point on. *See* Exhibit 6 at :30-3:50. The struggle went on, and Officer Ybarra warned Mr. Contreras he was going to tase him, but Officers Ybarra and Robbins continued to try to get it Mr. Contreras to turn onto his stomach. *Id.* at :30-1:35. Officer Ybarra then reholstered his taser and tried to assist Officer Robbins in getting Contreras' hands behind his back. 1:55-2:35. It was not until over two minutes into a physical struggle that a taser was ultimately used by Officer Robbins. *See id.* at 2:35-2:45.

17. When viewed under the foregoing standards, a reasonable police officer could believe that the use of the taser as a response to Contreras' repeated violent resistance was lawful. *Id.* The summary judgment evidence establishes that Officer Defendants Pedro Ybarra, Lonnie Jackson, Phillip Martinez, Jerry Lockhart and Dana Robbins did not use an unreasonable level of force during the incident. Thus, Officer Defendants are each entitled to summary judgment on Plaintiffs' excessive force claim. In the alternative, Officer Defendants are entitled to qualified immunity, as pled in their Motion and this Reply to Plaintiffs' Response below.

## B. AMERICANS WITH DISABILITIES ACT ALLEGATIONS

18.     Plaintiffs do not have evidence to support a claim against Officer Defendants individually for violations of the Americans with Disabilities Act.  Title II of the ADA provides that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-672 (5th Cir. 2004).

19.     Officer Defendants dispute all three prongs here. First, the ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). There is simply no evidence Mr. Contreras qualified as a disabled individual other than being under the influence of illegal drugs at the time of the incident, unbeknownst to the responding police officers.  *See* Exhibit 7 – Autopsy of Gerardo Contreras. Plaintiffs provide no evidence that Mr. Contreras had a disability, they presented no record of impairment, and nothing to support that he was regarded as having such an impairment.

20.     Second, there is no evidence to support an allegation that Mr. Contreras was denied the benefits of any services, programs, or activities by individual CCPD police officers.  CCPD Officers responded appropriately, in light of all available facts.  Finally, there is no evidence that

the City, by way of any of its officers' actions, discriminated against Mr. Contreras "by reason of his disability." Without furnishing sufficient proof of these elements, Plaintiffs cannot prevail on those theories.

21.     Plaintiffs attempt to satisfy the third prong on a theory of "failure to accommodate." That theory is expressly codified in Title I of the ADA (governing employment), which defines "discriminat[ion] ... on the basis of disability" to include "not making reasonable accommodations [for a disabled employee's] **known physical or mental limitations**." 42 U.S.C. § 12112(b)(5)(A) (Emphasis added). Although Title II contains no similarly explicit definition, *see* 42 U.S.C. §§ 12131, 12132, cases recognize that a public entity's failure to reasonably accommodate the known limitations of persons with disabilities can also constitute disability discrimination under Title II. *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 & n.11 (5th Cir. 2005) ("[Title II] impose[s] upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." (citing 42 U.S.C. § 12131)); *see also Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 Fed.Appx. 214, 215 (5th Cir. 2015) (adapting the failure-to-accommodate standard from Title I to Title II); *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (same).

22.     Title II claims fall in the specific context of police officers who fail reasonably to accommodate the *known* limitations of disabled persons they detain. *See Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 570–71, 575–76 (5th Cir. 2002) (affirming jury verdict that police officers discriminated against deaf arrestee by failing to accommodate the limitations arising from his inability to hear); *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000) ("Once the area was secure and there was no threat to human safety, the Williamson County Sheriff's deputies would have been under a duty to reasonably accommodate Hainze's disability...."); *see also Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 174 (4th Cir. 2009) ("In the context of arrests,

courts have recognized two types of Title II claims: (1) wrongful arrest, where police arrest a suspect based on his disability, not for any criminal activity; and (2) reasonable accommodation, where police properly arrest a suspect but fail to reasonably accommodate his disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees."). None of these examples pertain to the situation at hand, and the CCPD officers did not fail to accommodate any disability of Mr. Contreras. In fact, Officer Ybarra immediately called for paramedic assistance for Mr. Contreras when he recognized it was needed. (*See* argument below regarding medical indifference).

23.     Indeed, Plaintiffs have not sufficiently pled that Plaintiff had any disability to any relevant relationship between the alleged disability and the Defendants' alleged failure to accommodate the associated limitations. *See Garza v. City of Donna*, 2017 WL 2861456 (S.D. Tex. July 5, 2017).

24.     Mr. Contreras' "mental impairment" if any, was related to ingesting an illegal substance, namely cocaine, which was later found in his system at the time of the autopsy. Exhibit 7 – Autopsy of Gerardo Contreras. Further, there is absolutely no evidence Officer Defendants knew Mr. Contreras was under the influence of narcotics, or that he was suffering from any medical disability or needed medical assistance, nor was any alleged disability open or obvious to responding officers. By virtue of the foregoing, Officer Defendants submit that they are entitled to judgment as a matter of law on Plaintiffs' ADA claim.

### C.  MEDICAL INDIFFERENCE

25.     Within their Response, Plaintiffs allege that Officer Defendants have failed to address Plaintiffs' claim of "medical indifference" (Plfs' Response p.2 fn. 1), but Plaintiffs' Second Amended Petition does not appear to set out a cause of action against the officers for

medical indifference. Out of an abundance of caution, should the Court find Plaintiffs have pled a medical indifference claim, Officer Defendants will still address any medical indifference claim here.

26.     To establish the medical care claim, Plaintiffs must show that the Defendants acted with deliberate indifference to Contreras' serious medical need. *See Gobert v. Caldwell,* 463 F.3d 339, 345-46 (5th Cir. 2006). A defendant acts with deliberate indifference only if he knows that a detainee faces a substantial risk of serious bodily harm and he "disregards that risk by failing to take reasonable measures to abate it." *Id.* at 346 (quoting *Farmer v. Brennan,* 411 U.S. 825, 847 (1994)). To prove deliberate indifference, the plaintiff must "submit evidence that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (internal quotations and citation omitted). None of those circumstances are present in the instant case. Paramedics were on scene to treat Mr. Contreras quickly after Mr. Contreras was detained.

27.     Absent an allegation that the Officers knew Contreras has taken cocaine or observed symptoms of an imminent overdose, there is no deliberate indifference. *Compare Weaver v. Shadoan*, 340 F.3d 398, 411 (6th Cir. 2003); *Watkins v City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001); *Long v. City of La Habra*, 2005 WL 2219442 at * 1; *Lutz v. Smith*, 180 F. Supp.2d 941, 944 (N.D. Ohio 2001); *Hutto v. Davis*, 972 F. Supp. 1372, 1376-77 (W.D. Oklahoma 1997). In *Watkins,* the police arrested Watkins in a room littered with cocaine; although he appeared nervous, he denied use of drugs. 273 F.3d at 684. Two hours later, he fell off a chair at the police station, complained of a stomach ache, felt "sick," and looked "high"; again, he denied use of cocaine. *Id.* at 684-85. An hour later, he was found in a cell without a pulse and not breathing. *Id.* at 685. The Sixth Circuit upheld summary judgment for the officers. The

evidence had to show the officers knew the plaintiff needed medical attention for swallowing drugs; "should have known" did not meet the test for deliberate indifference. *Id.* at 686. Because the officers did not see him take drugs, he did not admit to taking drugs, and he did not request medical treatment for taking him, there was no evidence of deliberate indifference. *Id.*

28.     In *Weaver,* plaintiff was detained for a traffic violation; when the officer suspected a bulge in Weaver's pocket was cocaine, he fled. 340 F.3d at 401-02. When the officer finally apprehended him, he had a bag with suspected cocaine residue. *Id.* at 402. Ninety minutes later, Weaver began "jerking" though his vitals seemed normal; ***the officer summoned paramedics***, but Weaver denied taking anything and declined to go to hospital. *Id.* at 403 (Emphasis supplied). Although Weaver vomited on the way to the jail and appeared "out of it," the officers thought he was faking it. *Id.* at 404. About 30 minutes later, the officer changed his mind and summoned an ambulance to take him to a hospital. *Id.* On the way to the hospital, Weaver, stopped breathing; he died from a fatal cocaine overdose. *Id.* at 405. The Sixth Circuit upheld summary judgment. This evidence did not establish deliberate indifference. *Id.* at 411. Again, the officers did not see Weaver take cocaine and he denied using it; when he became ill, they summoned help. *Id.* The fact the officer thought Weaver was "faking it" showed he did not subjectively believe Weaver was at serious risk. *Id.* at 412. *See also Long,* 2005 WL 2219442 at *1 (knowledge that detainee might have swallowed something coupled with a dilated pupil was "no evidence" of actual knowledge there was a specific risk of drug overdose): *Hutto,* 972 F. Supp. at 1376-77 (no evidence of deliberate indifference towards a detainee who swallowed bag of methamphetamines before arrest; although officers knew he had swallowed something, he did not say he had taken a dangerous amount and did not exhibit symptoms that would be easily recognized as a drug overdose); *Lutz,* 180 F. Supp.2d at 944-45 (no deliberate indifference when arresting officers knew

pre-trial detainee taken some pills from a bottle, but did not summon medical attention until he exhibited signs of an overdose). Each of these cases involve instances wherein police officers had even more knowledge regarding the detainee's drug use, and still they were not found responsible for any medical indifference.

29. Here, Plaintiffs have not presented evidence that Officer Defendants were deliberately indifferent to Contreras' medical needs, or that they had actual knowledge Contreras was a serious medical risk for a cardiac event due to drug use. CCPD officers did not have the benefit of the Ring cameras prior to their arrival to find a combative Mr. Contreras on his neighbor's porch. Also, the officers had not yet found the drug paraphernalia in the home across the street where Mr. Contreras came from. Instead, they were acting on information that someone had a weapon and trying to detain Mr. Contreras. None of Mr. Contreras' actions were obvious signs of a drug overdose, nor any disability as Plaintiffs have intimated in their Second Amended Complaint. Plaintiffs' Second Amended Complaint at p.12 ¶34-38. Indeed, Mr. Contreras did not reveal to police officers he had any medical issue upon their arrival. Nor did he tell them he had taken any drugs. *See* Exhibit 6 – Ring Video 1; *see also* Exhibit 8 – Dash Cam Video.

30. Again, Plaintiffs have not specifically pled a medical indifference claim as they assert in their Response. However, if the Court finds they have, Officer Defendants maintain there is no evidence to support a claim for medical indifference against the individual Officer Defendants whatsoever, and Officer Defendants are each entitled to judgment as a matter of law on this claim. The incontrovertible realities can be seen from the video. *See id.* Within seconds after Mr. Contreras stopped resisting, Officer Ybarra states, "we got him in cuffs" and asks Mr. Contreras "Can you hear me?". He then immediately demanded a medic stating "Tell them start medic. Start medic". Another person responded, "you got a medic right here." Officer Ybarra immediately

responded. "Have them come up." *Id.* at 3:50-4:10. Paramedics immediately took over rendering aid, dragging Mr. Contreras away from the porch so they could work. *Id.* at. 4:28-4:35. There was no delay or indifference on the part of CCPD officers. Consequently, the individual Defendants are entitled to summary judgment on their qualified immunity defense to any medical care/indifference claim.

### D. OFFICER DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

31.     Since Plaintiffs cannot provide sufficient evidence to succeed on their underlying constitutional or statutory claims, the officers are entitled to qualified immunity. Qualified immunity serves to protect public officials from discovery and liability, except where a plaintiff shows that (1) the official's conduct violated a constitutional or statutory right, and (2) the official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). A public official violates "clearly established law" when, at the time of his conduct, the contours of a right are so clear that "every reasonable official" would understand his conduct violates the right. *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted). As discussed above, Officer Defendants did not violate Mr. Contreras' rights, and even if the Court finds they did their actions were objectively reasonable considering the law and the totality of the circumstances.

32.     Officer Defendants are each entitled to qualified immunity as to Plaintiffs' statutory and constitutional causes of action under 42 U.S.C. § 1983 and 42 U.S.C. § 12131. The Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018); *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The Court must determine (1) "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right"

and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* In the excessive force context, a constitutional violation is clearly established if no reasonable officer could believe the act was lawful. *Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009). Once an official pleads qualified immunity, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

33.     Here, Plaintiffs bring a Fourth Amendment excessive force claim under § 1983 and appear to include a failure to accommodate claim under 42 U.S.C. § 12132 against all Defendants. *See* Plaintiffs' Second Amended Complaint at pp. 7-13. However, based on the competent summary judgment evidence before the Court in Defendants' Motion and this Response, each CCPD Officer is entitled to qualified immunity dismissal on all of Plaintiffs' claims arising under federal law because the officers were acting in an official capacity on the date of the incident, they did not violate Mr. Contreras' rights, and their actions were objectively reasonable. Thus, Officer Defendants ask the Court to dismiss the claims against them on the basis of qualified immunity.

34.     Officer Defendants each individually assert they did not commit any constitutional violation. However, it is important to identify that Plaintiffs have specifically failed to present evidence to raise a genuine issue of material fact regarding any personal involvement by Defendants Lockhart and Jackson in the events forming the basis for their § 1983 claim. As a result, these two individual Defendants are certainly entitled to summary judgment on the federal claims.

35.     Personal involvement is an essential element of a civil rights claim against a defendant in his individual capacity. *See Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir.1992) (a plaintiff bringing a § 1983 action must "specify the personal involvement of each defendant").

"Supervisory officers ... cannot be held liable under § 1983 for the actions of subordinates ... on any theory of vicarious liability." *Alton v. Texas A & M Univ.,* 168 F.3d 196, 200 (5th Cir.1999); *see also Monell v. Dep't of Social Servs. of New York,* 436 U.S. 658, 691–95, 98 (1978); *Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir.2002). The only officers who had interaction or meaningful contact with Mr. Contreras were Officers Ybarra, Robbins and Martinez. Still, Defendants argue each individual officer is entitled to qualified immunity based on the totality of the circumstances and the reasonable actions of each officer.

### E. OFFICER DEFENDANTS ARE ENTITLED TO IMMUNITY AS TO PLAINTIFFS' STATE LAW CLAIMS.

36.     Plaintiffs allege assault and battery and plead an excessive force claim "is simply one for assault and battery". *See* Plaintiffs Second Amended Complaint at p.13 ¶ 41. The Plaintiffs' state law claims are barred by official immunity because the CCPD police officer Defendants are government employees, and each officer was in the course of the good faith performance of their duties.

37.     The Plaintiffs bring intentional tort claims under Texas law against the Officer Defendants in their individual capacities based on their conduct during the events surrounding the investigation and detention on the night of the incident. "Official immunity" is the state law analogue to the federal law defense of qualified immunity. *Baylor Coll. Of Med. v. Hernandez,* 208 S.W.3d 4, 10 (Tex. App.—Houston [14th Dist.] 2006, pet. den'd). Federal law affords qualified immunity to peace officers. *Wren v. Towe,* 130 F.3d 1154, 1158 (5th Cir. 1997).

38.     At the time of the incident, Officer Defendants were acting in their discretionary capacity as peace officers. Peace officers are immune from suit for their conduct if they were acting at all relevant times pursuant to their authority as peace officers and their actions were

discretionary and in good faith. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Under Texas law, a peace officer's investigation of a crime is considered a discretionary duty within his authority. *Wyse v. Dep't of Pub. Safety*, 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.). Texas law judges an officer's good faith under the same test federal courts employ for qualified immunity determinations in civil rights suits. *City of Lancaster*, 883 S.W.2d at 656. Texas courts "look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Id.* (internal quotation marks and citations omitted). Like qualified immunity, official immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citations omitted).

39. For all the reasons stated above which entitle the individual officers named in this suit to qualified immunity, they also are entitled to official immunity from suit under the laws of Texas. The Plaintiffs fail to allege facts that would show the defendants are not entitled to official immunity from suit. Therefore, for the reasons articulated within the Defendants' Motion and this Response, the intentional tort claims against the defendants in their individual capacities should be dismissed with prejudice.

## V.
### CONCLUSION

40. For the reasons stated above, Officer Defendants are entitled to summary judgment based on immunity with regard to Plaintiffs' claims against Officers Ybarra, Jackson, Martinez, Lockhart and Robbins.  Therefore, Officer Defendants request that this Court grant Defendants' Motion for Summary Judgment as to the entirety of Plaintiffs' claims.

Respectfully submitted,

By: /s/ Jessica J. Pritchett
    John B. Martinez
    State Bar No. 24010212
    Federal Bar No. 23612
    Email: john@hmglawfirm.com
    Marion M. Reilly
    State Bar No. 24079195
    Federal ID No. 1357491
    Email: marion@hmglawfirm.com
    Jessica J. Pritchett
    State Bar No. 24102377
    Federal ID No. 3070422
    Email: jpritchett@hmglawfirm.com

    HILLIARD MARTINEZ GONZALES LLP
    719 S. Shoreline Blvd.
    Corpus Christi, Texas 78411
    Telephone: (361) 882-1612
    Facsimile: (361) 882-3015 [Fax]

    **ATTORNEYS FOR**
    **OFFICER DEFENDANTS**

## NOTICE OF ELECTRONIC FILING

    The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas on the 30th day of March, 2020.

            */s/ Jessica J. Pritchett*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on this the 30th day of March, 2020, a true and correct copy of the foregoing was served upon the below named counsel by the means indicated below:

Lilia Castro                                    ***Via E-File Notification***
ASSISTANT CITY ATTORNEY
CITY OF CORPUS CHRISTI
LEGAL DEPARTMENT
P.O. Box 9277
Corpus Christi, Texas 78469-9277


Christopher J. Gale                        ***Via E-File Notification***
Amie Augenstein
GALE LAW GROUP, PLLC
711 N. Carancahua Street, Suite 514
Corpus Christi, Texas 78401


                                            */s/ Jessica J. Pritchett*