IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARIA D. CONTRERAS, *as Representative of the* ESTATE OF GERARDO CONTRERAS; and JOSE A. CONTRERAS<br>   *Plaintiffs,*<br><br>v.<br><br>CITY OF CORPUS CHRISTI, TEXAS<br>PEDRO YBARRA, *Individually*;<br>LONNIE JACKSON, *Individually*;<br>PHILIP MARTINEZ, *Individually*;<br>JERRY LOCKHART, *Individually*;<br>DANA ROBBINS, *Individually*;<br>JOHN/JANE DOE #6, *Individually*;<br>JOHN/JANE DOE #7, Individually; AND<br>JOHN/JANE DOE #8, Individually<br>   *Defendants* | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO: 2:19-cv-00133<br>JURY TRIAL |

## AFFIDAVIT OF OFFICER PEDRO YBARRA

I, Pedro Ybarra, an Officer for the City of Corpus Christi Police Department, being duly sworn on oath, state as follows:

1. "I am currently a Senior Police Officer with the City of Corpus Christi Police Department. I have been a police officer with CCPD for 14 years, with a hire date of August 8, 2005.

2. "I have had training through the Corpus Christi Police Academy and through the Field Training Officer (FTO) program. I have also had training throughout the years by working with other officers, and taken multiple continuing education classes during my tenure with CCPD."

3. "On March 22, 2018, I was informed by dispatch of a call regarding a man banging on a door and was informed there was a gun involved."

4. "My partner Officer Dana Robbins (a recruit officer at the time) and I responded to 2917 Masterson Drive in Corpus Christi, Texas, where dispatch informed us the incident was occurring."

5. "Upon arrival with Officer Dana Robbins we parked our unit and approached on foot. As we approached the address, we observed property was destroyed on the walkway and around the suspect, who I later learned was Mr. Contreras. We observed Mr. Contreras sitting in the corner on the front porch at 2917 Masterson Drive. I could not see what was under him by the way he was seated, and I was concerned he may have a weapon due to the information I received from dispatch."

6. "I informed Mr. Contreras I was CCPD and asked him to put his hands up. When Mr. Contreras asked to see a badge, I repeated that I was an officer and repeated commands multiple times that he needed to get on his stomach."

7. "I told my partner I was going to go 'hands on' and asked her to cover me so I could ensure he did not have a weapon."

8. "I put my rifle to my side, and approached Mr. Contreras in the corner on the porch. At which point he was making himself lower. He resisted as I attempted to place him in handcuffs."

9. "I tried to put Mr. Contreras on his stomach to place him in handcuffs. He was not compliant. I tried to get him out of the corner on the porch. He pushed me away, and continued to violently resist."

10. "I gave Mr. Contreras a knee in the abdomen to attempt to force him over onto his stomach in order to place him in handcuffs, but I was unable to do so."

11. "Other officers came in to help us, and we still struggled to detain Mr. Contreras."

12. "At some point during the struggle I took my taser out of the holster and told Mr. Contreras I was going to tase him because the 'hands on' techniques were not working, but I then re holstered my taser because it appeared Officer Robbins was gaining control, and we may be able to get his arm behind his back."

13. "As we were still unable to get his hand loose after ongoing struggle, I directed Officer Dana Robbins to prepare her taser by stating "partner get your taser out". Officer Martinez and I were able to turn Mr. Contreras' back toward Officer Robbins so she could tase him on the back. Officer Robbins then tased Mr. Contreras on his lower back to gain compliance."

14. "Ultimately, the team of officers were able to get one of Mr. Contreras' arms behind his back so that we could place the handcuff on him. Officer Robbins was then able to get Mr. Contreras' other arm to place both hands in handcuffs. I then stated, 'We got him in cuffs.'"

15. "Shortly after we were able to secure the handcuffs, I observed Mr. Contreras go limp. I asked, "Can you hear me?". When I did not receive a response from Mr. Contreras, I immediately called for a medic."

16. "The medics then approached and dragged Mr. Contreras away from the door and started to initiate care."

17. "I did not personally, nor did I hear another Officer, make any statement like 'got him good' during the incident."

18. "I was placed on administrative leave as a result of the incident, and complied with all requirements and requests pursuant to the CCPD internal affairs investigation."

19. "I believe the force utilized to detain Mr. Contreras on March 22, 2018 by CCPD officers was reasonable, necessary and in compliance with Corpus Christi Police Department policies."

20. "I, Officer Pedro Ybarra, hereby swear under oath that the information set forth in this affidavit is true and correct to the best of my knowledge, information and belief, and that I make this oath under the penalty of perjury."

_____
Affiant

Personally, appeared before me the above-named Pedro Ybarra and made oath as to the truth of the foregoing affidavit signed by Pedro Ybarra.

Signed and sworn before me this __15th__ day of __January__, 2020.

_____
Notary Public, State of Texas

LAURA GARCIA
Notary Public, State of Texas
Comm. Expires 03-11-2023
Notary ID 12852120-5