IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARIA D. CONTRERAS, *as Representative of the* ESTATE OF GERARDO CONTRERAS; and JOSE A. CONTRERAS<br>*Plaintiffs,*<br><br>v.<br><br>CITY OF CORPUS CHRISTI, TEXAS<br>PEDRO YBARRA, *Individually*;<br>LONNIE JACKSON, *Individually*;<br>PHILIP MARTINEZ, *Individually*;<br>JERRY LOCKHART, *Individually*;<br>DANA ROBBINS, *Individually*;<br>JOHN/JANE DOE #6, *Individually*;<br>JOHN/JANE DOE #7, *Individually*; AND<br>JOHN/JANE DOE #8, *Individually*<br>*Defendants* | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO: 2:19-cv-00133<br>JURY TRIAL |

## AFFIDAVIT OF OFFICER LONNIE JACKSON

I, Lonnie Jackson, an Officer for the City of Corpus Christi Police Department, being duly sworn on oath, state as follows:

1. "I am a Senior Police Officer with the City of Corpus Christi Police Department. I have been a police officer with CCPD for 21 years. My hire date was January 11, 1999.

2. "I have received training through the Corpus Christi Police Academy, and through the Field Training Officer (FTO) program. I have also had training throughout my years of employment as an officer by working with other officers, and continuing education and training."

3. "On March 22, 2018, at approximately 3:23am I was informed by dispatch of a man with a gun at 2917 Masterson Drive, Corpus Christi, Texas."

4. "I responded to 2917 Masterson Drive in Corpus Christi, Texas, where dispatch informed me the incident was occurring."

5. "I arrived to the scene and parked my car about three or four houses down, and heard sounds of a struggle."

6. "Upon arrival, I observed Officer Ybarra attempting to handcuff the man on the porch, who I later learned was Mr. Contreras, and he was resisting."

7. "Senior Officer Lockhart was standing off to the side. Senior Officer Philip Martinez was also there. I witnessed them try to gain control of Mr. Contreras several times, but he refused to release his arms from underneath his body."

8. "Officer Ybarra used compliance strikes and Mr. Contreras continued to yell and rotated his hips, failing to comply with requests to lay on his stomach."

9. "I observed Officer Dana Robbins tase Mr. Contreras in the back to gain compliance."

10. "I reached down and grabbed Mr. Contreras' legs as he was being handcuffed so Mr. Contreras could not rotate, which was my only physical contact with Mr. Contreras."

11. "Ultimately, one of the officers was able to get Mr. Contreras' arm behind his back and the officers managed to handcuff him."

12. "The medics then approached and dragged Mr. Contreras away from the door and started to initiate medical care."

13. "I did not witness a CCPD Officer stomp on Mr. Contreras' head."

14. "I did not personally, nor did I hear another Officer, make any statement like 'got him good' during the incident."

15. "I believe the force utilized was reasonable, necessary and in compliance with Corpus Christi Police Department policies."

16. "Immediately after the incident, I went across the street to try to determine where Mr. Contreras had come from. I observed the front yard of 2914 Masterson Drive, Corpus Christi, Texas, and it was in disarray and there was money on the sidewalk. I also observed planters knocked over.

17. "I knocked on the door and did not receive an answer. I announced myself as a CCPD Officer, and attempted to contact resident of the house to determine if they knew Mr. Contreras. No one was inside the home."

18. "I conducted a safety sweep of the residence for officer safety. I observed drug paraphernalia. Specifically, I observed what I believe to be a crack pipe and some paraphernalia on the floor in the bathroom. I left the drug paraphernalia undisturbed."

19. "I continued to check the home to make sure it was safe and to determine whether anyone was present. I did find a wallet on the kitchen counter which contained an ID. The ID helped me confirm Mr. Contreras' identity."

20. "I complied with all requirements and requests pursuant to the CCPD internal affairs investigation."

21. "I, Officer Lonnie Jackson, hereby swear under oath that the information set forth in this affidavit is true and correct to the best of my knowledge, information and belief, and that I make this oath under the penalty of perjury."

_____
Affiant

Personally, appeared before me the above-named Lonnie Jackson and made oath as to the truth of the foregoing affidavit signed by Lonnie Jackson.

Signed and sworn before me this __15th__ day of __January__, 2020.

_____
Notary Public, State of Texas



LAURA GARCIA
Notary Public, State of Texas
Comm. Expires 03-11-2023
Notary ID 12852120-5